IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEOANNA HODGES, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 2:05-cv-1310 |
| ) | Judge Thomas M. Hardiman |
| UPMC PRESBYTERIAN SHADYSIDE ) | |
| HOSPITAL, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

On January 26, 2007, this Court heard oral argument on the Motion for Summary Judgment filed by Defendant UPMC Presbyterian Shadyside Hospital (UPMC), which sought dismissal of all three claims asserted by Plaintiff Jeoanna Hodges (Hodges), *viz.*, hostile work environment, race discrimination, and retaliation. The first claim arose out of verbal sexual harassment that Hodges — an African-American woman — endured at the hands of an African-American male UPMC patient from December 2001 to April 2002, although the patient was not discharged from the practice until September 2004. The last two claims were predicated on UPMC's failure to transfer Hodges or to discharge the patient sooner.

At oral argument, counsel for Hodges conceded that the retaliation claim was untenable. The Court explained that its inclination was to grant the Motion as to the remaining two claims, but took the Motion under advisement to permit it to analyze counsels' arguments regarding the applicability of *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710 (3d Cir. 1997), a case that

neither party had briefed but which bore directly on Hodges' contention that the harasser's mere presence after April 2002 was sufficient to keep her hostile work environment claim alive for statute-of-limitations purposes. After reviewing the briefs in light of *Konstantopolous* and the additional authorities that counsel discussed at the hearing, the Court is convinced that UPMC is entitled to summary judgment on Plaintiff's hostile work environment and race discrimination claims.

### I.   Hostile Work Environment

Under 42 U.S.C. §2000e-5(e), a charge of employment discrimination must be filed within 300 days after the alleged unlawful employment practice occurred. The 300-day period applies when the plaintiff has instituted proceedings with a state or local agency, otherwise, the applicable period is 180 days. *See* 42 U.S.C. §2000e-5(e). This filing is a prerequisite to a civil suit under Title VII. *See West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 & n.8 (3d Cir. 1995).

In the case at bar, Hodges did not file her EEOC complaint until November 13, 2004. Thus, she must show at least one unlawful act that occurred after January 18, 2004 (300 days), or May 17, 2004 (180 days) for her hostile work environment claim to be actionable. *See West,* 45 F.3d at 754. As the last incident of harassment occurred in April 2002, Plaintiff has not made this showing.

At the hearing, Hodges' counsel argued that the patient's "mere presence" alone at UPMC until his discharge in September 2004 could "count" as an "unlawful act." Hodges has pointed to no authority to support this proposition, and the Court has found none. Beyond the patient's presence, Hodges conceded that she was alleging only two unlawful acts of harassment

after April 2002: the July 2004 telephone calls the harasser made to a staff-member at UPMC, inquiring of Hodges' whereabouts. But these telephone calls are temporally too far removed to enable Plaintiff to keep alive her claims as to the patient's more serious conduct from two years earlier.[1]

Nor are the July 2004 telephone calls actionable in their own right. In these phone calls, the patient merely inquired as to Hodges' presence in the hospital. Although Hodges may have found these inquiries to be subjectively offensive, they are not objectively offensive enough to be actionable under a hostile work environment theory. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993) (conduct does not rise to the level of a hostile environment unless it is both subjectively and objectively offensive). Accordingly, the Court finds that UPMC is entitled to summary judgment on Plaintiff's hostile work environment claim.

## II.   Race Discrimination

Generally, there are two ways a plaintiff can establish an unlawful discriminatory intent on the part of her employer. The first is through "direct evidence" of the employer's discriminatory intent; such a case has been described as a "mixed-motives" case and is analyzed

---

[1] *See Konstantopoulos*, 112 F.3d at 715 (holding that a seven-month break between two employment periods precluded the plaintiff from claiming a continuing violation covering acts allegedly occurring prior to the seven-month interruption); *see also Lesko v. Clark Pub. Serv.*, 904 F. Supp. 415, 420 (M.D. Pa. 1995) (holding that a two-year passage of time between the first and second alleged instances of harassment indicated that they were separate and distinct); *Fala v. Perrier*, No. 99-CV-3319, 2000 WL 688175 (E.D. Pa. May 25, 2000) (holding that a ten-month period between the last timely act of alleged discrimination and the first untimely act precluded the plaintiff from showing a continuing violation); *Sicalides v. Pathmark Stores, Inc.*, No. 99-CV-3465, 2000 WL 760439 (E.D. Pa. June 12, 2000) (finding that a three-month gap between the last timely act of alleged discrimination and the prior, untimely act precluded the plaintiff from establishing a continuing violation).

pursuant to the holding in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258 (1989), as modified by §107 of the Civil Rights Act of 1991, 42 U.S.C. §2000e-2(m). In a mixed-motives case, the evidence produced by the plaintiff so clearly shows discriminatory animus that it is unnecessary to shift the burden of production. The burden of non-production and the risk of non-persuasion are borne by the defendant who must demonstrate that it would have made the same employment decision regardless of discriminatory animus. *See Starceski v. Westinghouse, Inc.,* 54 F.3d 1089, 1098 (3d Cir. 1995). The second, more common method applies when a plaintiff's case consists entirely of indirect evidence of impermissible discrimination; in such a case the court applies the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 802 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253-54 (1981).

Hodges bases her race discrimination claim on both theories. Her direct evidence case relies on her assertion that a supervisor's cavalier reaction to the comments the patient made to Hodges supplies direct evidence of race discrimination. Hodges also articulates an indirect evidence theory, which relies upon her unsupported contention that when two Caucasian nurses had complained about offensive patients, the hospital discharged those patients immediately. As will be explained below, neither theory is viable.

### A. Direct Evidence

According to Hodges, when she first complained to her supervisor, Cheryl Brendel, about the patient's comments in September or October 2003, Brendel replied: "well, given that [the patient] is a black man, and you are a black woman, I thought that is how you talked to each other." (*See* Complaint ¶ 17). On the theory that Brendel's reaction constitutes direct

4

evidence of racial discrimination, Hodges insists that the burden-shifting mechanism set forth in *McDonnell Douglas* does not apply. Hodges is incorrect.

A review of the record confirms that this case does not contain evidence sufficient to rise to the level of direct evidence of race discrimination. In direct evidence cases, the employee alleging discrimination must produce "direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Price Waterhouse*, 490 U.S. 228, 277 (1989); *see also Starceski*, 54 F.3d at 1097. If the employee produces direct evidence of discriminatory animus, the employer must then produce evidence sufficient to show that it would have made the same decision if the illegal bias had played no role in the employment decision. *See Price Waterhouse*, 490 U.S. at 244-45 *see also Starceski*, 54 F.3d at 1096. In order to shift the burden, the plaintiff must produce evidence that is "so revealing of discriminatory animus that it is not necessary to rely upon any presumption from the prima facie case . . . ." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 778 (3d Cir. 1994).[2]

Here, there is no evidence that Brendel was a decisionmaker with respect to whether the patient should be discharged from UPMC's practice. Indeed, the evidence of record shows that Brendel was *not* the decisionmaker responsible for discharging the patient. (*See* Brendel Depo. at 31; *see also* Riley Depo. at 14). Accordingly, Brendel's comment is not direct evidence of

---

[2] "Stray remarks in the workplace, statements by nondecisionmakers, or even statements by decisionmakers unrelated to the decisional process itself, do not constitute direct evidence of discrimination." *Fakete v. Aetna, Inc.*, 152 F. Supp.2d 722, 733 (E.D. Pa. 2001) (citing *Starceski*, 54 F.3d at 1096); *see also Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1111-12 (3d Cir. 1997) (statement made by plaintiff's superior that "if you are getting too old for the job, maybe you should hire one or two young bankers" not direct evidence of age discrimination); *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decision-makers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

discrimination. *See Starceski,* 54 F.3d at 1096; *see also Clark v. Hess Trucking Co.,* 879 F. Supp. 524, 528, 530 (W.D. Pa. 1995) (holding that allegations that the defendant's vice president of finance uttered racial epithets at the plaintiff was not direct evidence of race discrimination because there was no proof that his statements were connected in any way to the decision to fire the plaintiff).

### B. Indirect Evidence

Because there is no direct evidence of race discrimination, Hodges must prove this claim, if at all, through the *McDonnell Douglas* burden-shifting framework. Thus, Plaintiff must show, among other things, at least one valid comparator. *See Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1065 n.5 (3d Cir. 1996) (*en banc*). The Court is unpersuaded that the comparators Plaintiff offers are, in fact, "comparable."

Here, the only comparators Plaintiff identifies are two Caucasian UPMC nurses whose complaints supposedly resulted in the immediate discharge of other offensive patients. But both of these nurses averred that they never complained about any patients harassing them, and that they never requested that any patient be discharged. (*See* MSJ at 15-16 (citing Petrisko Decl. and Thearle Decl.)). A plaintiff's unsubstantiated belief that a fact is true cannot survive a summary judgment motion, particularly one that is supported by sworn affidavits which contradict her belief. *See Chirinos de Alvarez v. Creole Petroleum Corp.,* 613 F.2d 1240, 1244 (3d Cir. 1980) (affirming a district court's grant of summary judgment, noting that "when an issue of fact is supported by affidavits or other evidence which admit of only one conclusion, the court may not draw an opposite conclusion merely on the basis of unsupported allegations").

### III.     Conclusion

For the foregoing reasons, Defendant's motion for summary judgment will be granted in its entirety.

An appropriate Order follows.

February 26, 2007

*Thos M. Hardiman*
Thomas M. Hardiman
United States District Judge